NO. 07-03-0308-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JANUARY 28, 2004



______________________________




IN THE INTEREST OF J.W.M., JR. AND L.P.M., CHILDREN



_________________________________



FROM THE 99th DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2001-513,871; HONORABLE ANDY KUPPER, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

ORDER ON MOTION TO


SUPPLEMENT APPELLEE'S BRIEF



 This appeal of a judgment terminating parental rights, accelerated under Family
Code Chapter 263, was heard on oral argument on January 13, 2004. Pending before the
court is a motion submitted by appellee Texas Department of Protective and Regulatory
Services and received by the court January 16, requesting leave to supplement appellee's
brief pursuant to Rule 38.7 of the Rules of Appellate Procedure. Appellant Daphne Mayo
has filed a response opposing appellee's motion.


 Rule 38.7 states that a brief may be supplemented whenever justice requires.
Appellee's motion states in conclusory fashion that its filing of a supplemental brief will not
"greatly delay" the court's consideration of the appeal, that no prejudice will result to
appellants and that justice and judicial economy require the supplementation of the brief.
Other than a statement that it "would like to supplement its brief with additional evidence
from the record that would support the termination grounds and address" appellant's factual
and legal sufficiency point of error, however, appellee gives us no hint of the substance of
its proposed supplement, much less a preview of the proposed supplement itself. As a
result, we have no basis on which to judge the correctness of its assertions.

 Appellant points out that her reply brief was filed November 17, 2003, and appellee
had ample time to supplement its brief before oral argument if necessary. Appellee does
not contend that appellant has raised issues to which it has not had opportunity to respond.
Appellant also expresses concern over the potential delay in disposition of the case.

 Concluding that appellee has failed to present a basis for concluding that justice
requires supplementation of its brief, we must deny appellee's motion. 


 Per Curiam



PANEL B

NOVEMBER 25, 2008
______________________________


KURT T. WELLS, 

                                                                                                 Appellant

v.

THE STATE OF TEXAS, 

                                                                                                 Appellee
_________________________________

FROM THE COUNTY COURT AT LAW NO. 2 OF LUBBOCK COUNTY;

NO. 2006-498,230; HON. DRUE FARMER, PRESIDING
_______________________________

Opinion
_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
          Kurt T. Wells (appellant) appeals his conviction for driving while intoxicated. Via
three issues, he contends that the trial court erred by allowing in unauthenticated hearsay
evidence that violated his Sixth Amendment right to confront witnesses. The State
concedes that the admission of the evidence violated the aforementioned constitutional
right; nonetheless, it believes the error to be harmless. We disagree and reverse the
judgment. 
          The evidence in question consisted of a written report or resolution purportedly
issued by the American Optometric Association acknowledging the “scientific validity and
reliability of the HGN test as a field sobriety test when administered by properly trained and
certified police officers . . . .” The State offered this resolution after the appellant purported
to “question the validity of” that test. Furthermore, it did so through its sole witness, the
arresting officer. Yet, nothing of record indicates that the arresting officer was a member
of the Optometric Association, was an optometrist, had any expertise in optometry, knew
the origins or authenticity of the exhibit, or knew of the tests or studies, if any, undertaken
by the Association in support of its alleged opinion. Despite that, the State had the officer
identify the item in front of the jury, after which the prosecutor personally read aloud its
content. The timing of this event was quite interesting for not only was it one of the last
pieces of evidence tendered by the State before opting to rest but it was also some of the
last testimony heard by the jury before the trial court recessed for the day. Yet, that was
not the last time the State alluded to the resolution.
          During its closing argument, the State again mentioned the exhibit. In effort to sway
the jury and gain a conviction, the prosecutor suggested that defense counsel was “going
to get up here, and he’s going to holler and yell and scream about this piece of paper, and
all this does is tell you that HGN . . . HGN is a scientific, reliable, valid, tool for judging
sobriety.” Appellant’s legitimate objection to the report was also used by the State, during
its closing, as a means of discrediting defense counsel. This happened when the
prosecutor directed the jurors’ attention to the supposed inconsistency in defense counsel
attempting to admit appellant’s medical records while simultaneously attempting to exclude
the Association’s inadmissible resolution. 
          As previously mentioned, the State concedes that admission of the report violated
appellant’s Sixth Amendment right to confront his accusers. Thus, we are obligated to
assess whether the error was harmful. And, since the error in question is one of
constitutional magnitude, then we must apply the test incorporated in Rule 44.2(a) of the
Texas Rules of Appellate Procedure. That test obligates us to reverse the conviction
unless we conclude, beyond reasonable doubt, that the error did not contribute to the
outcome. Tex. R. App. P. 44.2(a); Gibson v. State, 253 S.W.3d 709, 716-17(Tex. App.–
Amarillo 2007, pet. ref’d). Were it possible for us to interview the jurors to accurately
assess whether it affected them, our job would be easy. But, that we cannot do. Instead,
we look at the nature of the wrong, its egregiousness, its repetition, its timing, the quantum
of evidence illustrating guilt, and like indicia to gauge the possibility and extent, if any, of
its impact. See Scott v. State, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007) (describing the
factors to consider). 
          With that said, we now turn to the record before us and immediately note that the
HGN test and its validity was a focal point of the trial. The prosecutor stated as much to
the trial court in response to appellant’s objection. And, while that test was not the only
one administered by the arresting officer, it was one of the ones used by him in assessing
appellant’s loss of mental or physical ability due to the ingestion of alcohol, that is,
intoxication.


 And, a substantive amount of time was spent at trial in discussing that test
and its administration on appellant. 
          Next, the timing of the State’s effort cannot be ignored. Again, it waited until it was
about to finish its evidentiary presentation to tender the document. Additionally, that
instant happened to coincide with the end of the day’s proceedings. So, it can be said that
the Association’s alleged resolution about the validity of the HGN test was received at a
most opportune time for the State, that being at a time when it had the greatest potential
to ring uninterrupted in the jurors’ ears. 
          That the State redirected the jury’s attention to the resolution during its closing
argument merits comment as well. This served not only to remind the jurors of the
inadmissible evidence but also to renew its prior impact. And, by peppering its argument
with such emotive words as “scream,” and “holler,” and “yell” in describing its opponent’s
reference to the report, the State found an effective way to catch the jurors’ attention while
also belittling defense counsel for voicing a legitimate concern. 
          Next, we acknowledge that there exists a quantum of evidence, apart from that
relating to the HGN report, that illustrates appellant’s guilt. Moreover, it is quite possible
that the jury would have convicted appellant had the evidence now at issue not been
admitted. Yet, that is not to say that the evidence of guilt was uncontradicted; it was
contradicted. For instance, appellant did not exhibit slurred speech. Nor did he engage
in erratic driving. So too was he able to respond to various directives from the officer and
manipulate small objects like his keys. And, that the jurors were deadlocked on the issue
of guilt until the trial court submitted its “Allen Charge” is further indicia suggesting that the
evidence of appellant’s culpability was less than overwhelming. 
          To this we add that while it is laudable for the State to concede error, it seems
somewhat incongruous to invite like conduct in the future by simply holding that its actions
were harmless. Indeed, experience teaches that in the heat of battle litigants often push
the envelope of propriety until they are told to stop. As the old cliche goes, “give ‘em an
inch and they’ll take a mile.” So, care should be taken to dissuade litigants from attempting
to take the mile when given the inch inherent in the harmless error rule. This seems
especially so in those situations were there exists a quantum of admissible evidence
indicative of guilt. The presence of legitimate evidence of guilt should not be seen by the
State as a way to slip into the record evidence of dubious legitimacy. 
           In sum, we cannot know with absolute certainty what effect, if any, the admission
of the report had upon the jurors’ mental processes here. Much is left to reasonable
deductions and probabilities arising from the particular circumstances captured of record. 
And, if those circumstances prevent us from concluding, beyond reasonable doubt, that
the error had no impact on the outcome, then the right course of action is to reverse the
judgment and grant the State opportunity to retry the accused via a proceeding free of
taint. So, because the circumstances at bar do not allow us to hold, beyond reasonable
doubt, that the report had no affect on the decision to convict appellant, we reverse the
judgment and remand the cause for further proceedings.


 
 
                                                                           Brian Quinn
                                                                          Chief Justice
           
Publish.